IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: THE WEINSTEIN COMPANY HOLDINGS. LLC, *et al*., | ) ) ) | Chapter 11 |
| Debtors. | ) ) ) ) | Case No. 18-10601 (MFW) (Jointly Administered) |
| SPYGLASS MEDIA GROUP, LLC (f/k/a (LANTERN ENTERTAINMENT LLC), | ) ) ) ) | |
| Appellant, | ) ) | C.A. No. 21-1151 (MN) |
| v. | ) ) | |
| ROBERT WEINSTEIN., | ) ) | |
| Appellee. | ) ) | |

## MEMORANDUM OPINION

R. Craig Martin, Matthew S. Sarna, DLA PIPER LLP (US), Wilmington, DE; Brett Ingerman, DLA PIPER LLP (US), Baltimore, MD; Rachel Ehrlich Albanese, DLA PIPER LLP (US), New York, NY – Counsel to Appellant Spyglass Media Group, LLC.

Robert S. Chapman, SAUER & WAGNER LLP, Los Angeles, CA; Adam G. Landis, Kerri K. Mumford, LANDIS RATH & COBB LLP, Wilmington, DE – Counsel to Appellee Robert Weinstein.

August 10, 2022
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is an appeal by Spyglass Media Group, LLC ("Spyglass") from the Bankruptcy Court's August 9, 2021 Order (B.D.I. 3403, AA2015-2049)[1] and accompanying Memorandum Opinion, dated August 12, 2021 (B.D.I. 3413, AA2089-2100), which granted appellee Robert Weinstein's motion (B.D.I. 3363, AA812-830) ("Motion to Enforce") seeking entry of an order enforcing the Bankruptcy Court's prior order (B.D.I. 846, AA353-576) ("Sale Order") which approved the sale of certain assets by The Weinstein Company Holdings LLC ("TWC") and certain affiliates. For the reasons set forth herein, the Court will affirm the Order.

I.  **BACKGROUND**

A.  **The APA and the Sale Order**

On July 29, 2010, Mr. Weinstein entered into an employment agreement (AA831-847) ("the Employment Agreement") with TWC pursuant to which he was granted, in addition to his base salary, an interest in certain net revenues received by the Debtors from some of the films that Mr. Weinstein produced ("the Participation Interest") (*id*. § 4(b)). The Employment Agreement expired by its own terms on December 31, 2015. (*Id*. § 1). The Participation Interest survived expiration of the Employment Agreement. (*Id*. § 21).[2]

On March 19, 2018, TWC and certain affiliates ("the Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. That same day, the Debtors filed a motion

---

[1]   The docket of the Chapter 11 cases, captioned *In re The Weinstein Company Holdings LLC*, No. 18-10601 (MFW) (Bankr. D. Del.), is cited herein as "B.D.I. __." The Appendix (D.I. 8) filed in support of Spyglass's opening brief is cited herein as "AA __."

[2]   Spyglass argues that the Participation Interest "may not have survived the termination" and the Employment Agreement does not contain "the customary features of a nonqualified deferred compensation plan as required under section 409A of the Internal Revenue Code." (D.I. 7 at 9, n15). This contention was not raised below and will not be considered now. *See Montrose Medical Group*, 243 F.3d 773, 783 (3d Cir. 2001) (declining to consider argument raised for the first time at oral argument).

1

seeking approval of a sale of substantially all of their assets to Spyglass pursuant to an Asset Purchase Agreement (as amended and modified, "the APA") (AA580-680). On May 9, 2018, the Bankruptcy Court entered the Sale Order approving the Sale of "Purchased Assets" (as defined in the APA) to Spyglass under § 363 of the Bankruptcy Code and the assumption and assignment of certain contracts under § 365 of the Bankruptcy Code. (AA353-576). The Sale Order provides, among other things, that:

> "The transfer of the Purchased Assets to the Purchaser . . . will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all claims, liens . . . Excluded Liabilities (as defined in the APA . . .) . . ., interests, rights and encumbrances (***other than Permitted Liens*** and Assumed Liabilities) . . ." (Sale Order ¶ AA, AA362-363) (emphasis added);

> "Notwithstanding anything set forth herein or in the APA and notwithstanding the inclusion of any Contract or Lease in the Contract Notice or the Assumed Contract Schedule, ***nothing in this Order or the APA shall be deemed to otherwise alter, modify, extend or enhance the Debtors' rights, title or interest to or under any Purchased Asset*** or to grant the Purchaser any rights, title or interest in or under any property (including, for the avoidance of doubt, any property that is identified as a Purchased Asset) that is not property of the Debtors' estates." (*Id*. ¶ LL, AA368) (emphasis added);

> "Pursuant to Bankruptcy Code sections 105(a) and 363(f), the Purchased Assets shall be sold free and clear of all Claims ***(other than Permitted Liens*** and Assumed Liabilities, each as defined in the APA . . .". (*Id*. ¶ 12, AA376) (emphasis added); and

> "To the extent there is any inconsistency between the terms of this Order and the terms of the APA, ***the terms of this Order shall govern***." (*Id*. ¶ 49, AA394) (emphasis added).

The Sale Order further provided that the Bankruptcy Court retained "jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA . . . and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale." (*Id.* ¶ 51, AA395; *id.* ¶ 66, AA400). The Sale closed on July 13, 2018. (AA810-811).

B. <u>**The Motion to Enforce**</u>

On June 16, 2021, Mr. Weinstein filed the Motion to Enforce, seeking a determination that he was entitled to payment from Spyglass of his Participation Interest in the film *Scream 4* ("the Film"), which was one of the "Purchased Assets" sold to Spyglass under the APA. (AA812-830). Mr. Weinstein argued that because he had a 1.875% Participation interest in the Film, the Debtors did not own 100% of the Film and could only sell what they owned to Spyglass. Mr. Weinstein argued that his interpretation is confirmed by § 3.10(a) of the APA in which the Debtors represented that they "owned all right, title, and interest in and to" the Film "free and clear of all liens (other than Permitted Liens)." (APA § 3.10(a), AA598-599). Mr. Weinstein further asserted that under §§ 2.3 and 2.4(j) of the APA, the Purchaser, Lantern (now known as Spyglass), had assumed all liabilities for "Participations" for any period after the Closing Date for each Covered Title sold to it, including the Film. Section 2.3 of the APA provides that Spyglass assumed all liabilities arising from operation of the Purchased Assets (*Scream 4* is a Purchased Asset) (APA § 2.3, AA587). Section 2.4(j) of the APA provides that any Participation that arose for any period *prior to* the Closing Date is an Excluded Asset. (APA § 2.4(j), AA588). The Disclosure Schedule specifically listed Mr. Weinstein's Participation Interest in the Film as currently owed by the Debtors. (AA1755). Mr. Weinstein further provided evidence that the revenues earned on that film had recently exceeded the threshold for payment of that interest. (Motion to Enforce Ex. 7, AA1862-1864).

Spyglass opposed the Motion to Enforce. (B.D.I. 3387). Spyglass argued that, under the unambiguous terms of the APA, Spyglass purchased substantially all of the assets of the Debtors "free and clear," subject to the Assumed Liabilities and Permitted Liens, but that Spyglass specifically negotiated to exclude certain Liabilities so that it was assuming only post-Closing Participations associated with Purchased Assets owed to non-Affiliates. Spyglass pointed to

3

section 2.4(b) of the APA, which states that "Notwithstanding any other provision in this Agreement or any other writing to the contrary" Spyglass does not assume "any amounts due to Affiliates of any Seller Party, including any declared dividends or distributions." (APA § 2.4(b), AA588). Spyglass further relied on section 2.4(f) which excludes from liabilities it assumed under the APA "all Liabilities arising under any Contract that is not an Assigned Contract." (APA § 2.4(f), AA588). There was no dispute that Mr. Weinstein is an Affiliate of the Debtors as that term is defined in the APA and no dispute that his Employment Agreement was not assumed and assigned to Spyglass. Spyglass contended that the Sale Order did not eliminate Mr. Weinstein's claim, but that this claim remained the estates' obligation to pay.

Mr. Weinstein argued that Spyglass' interpretation was contradicted by numerous sections of the APA, including § 2.3 in which Spyglass assumed "all liabilities arising from operation of the Purchased Assets . . . ." (AA587). Mr. Weinstein argued that the Film is a Purchased Asset and the Participation Rights claimed by him arise from the operation (*i.e.*, distribution) of the Film. Mr. Weinstein further contended that § 2.4(j) supported his interpretation of the APA because it provided that only pre-closing Participation Interest payments were Excluded Liabilities, which meant that post-closing Participation payments are not Excluded Liabilities. Spyglass argued, however, that § 2.4(b) of the APA is the more specific provision as to Mr. Weinstein and thus has precedence over the more general provisions of §§ 2.1, 2.3 and 3.10 of the APA, which related to the Participation Interests held by numerous parties. The Liquidating Trust for the Debtors' estates also disputed Spyglass' interpretation, arguing it was not reasonable to conclude that the Debtors sold the Film (and therefore, no longer owned it or the revenues it would generate in the future) but that the estates would be required to pay any claim for future revenues realized by that Film.

### C.  The Memorandum Opinion and Order

The parties agreed that the APA is unambiguous and that extrinsic evidence was, therefore, not required. Following oral argument on August 5, 2021, the Bankruptcy Court issued a bench ruling, rejecting Spyglass' suggested interpretation and granting the Motion to Enforce. (AA2056-2088 at AA2085-2087). The Order was entered on August 9, 2021 and, on August 12, 2021, the Bankruptcy Court issued its Memorandum Opinion in support of the bench ruling. (AA2089-2100). The Bankruptcy Court agreed with Spyglass' premise that the specific provisions of a contract control more general ones. It disagreed, however, with Spyglass' conclusion that § 2.4(b) was the more specific provision. The Bankruptcy Court found that § 2.4(b) was "very broad and states that <u>any</u> liability owed to <u>any</u> Affiliate of the Debtors was an Excluded Liability that Spyglass was not assuming. (Mem. Op. at 7-8 (emphasis in original)). The Bankruptcy Court concluded that "the more specific provisions of the APA (and the Sale Order) were those that provided that [Mr. Weinstein]'s Participation Interest was preserved." (*Id*. at 8).

On August 9, 2021, Spyglass filed its Notice of Appeal from the Order. (D.I. 1). The appeal is fully briefed. (D.I. 7, 8, 11, 12). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

### II.  JURISDICTION AND STANDARD OF REVIEW

The Order enforcing the Sale Order is final and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

Mr. Weinstein argues that this Court should review the Bankruptcy Court's Order and Memorandum Opinion, which interpreted and enforced its own Sale Order, for abuse of discretion, as opposed to *de novo*. (D.I. 11 at 1-2). Mr. Weinstein relies on the Third Circuit's decision in *In re Shenango Group Inc*. for the proposition that a "bankruptcy court's review of its own order

5

ought to be subject to review for an abuse of discretion." 501 F.3d 338, 346 (3d Cir. 2007). Spyglass disagrees on the basis that the Bankruptcy Court's decision is an interpretation of the APA and contract interpretation, a question of law that is reviewed *de novo*. (D.I. 12 at 3-4).

As Spyglass correctly points out, in *Shenango*, the Third Circuit reviewed whether a confirmed plan of reorganization obligated the reorganized debtor to fully fund a pension plan. The Third Circuit explained that it had yet to adopt a standard for reviewing a bankruptcy court's interpretation of its own order, so it analyzed non-binding precedent from other circuits. The Third Circuit concluded:

> As the Eleventh Circuit pointed out in *In re Optical Technologies*, simply because a bankruptcy court's interpretation of its order is entitled to deference does not "insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review. The rationale for deferring to a court's interpretation of its own order does not extend to its analysis of broad legal principles. . . ."
>
> We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion. ***This deferential standard should not apply, of course, if the issue being reviewed presents only a question of law.*** This bifurcated approach both ensures the appropriate role of this Court to review *de novo* pure questions of law, and also accords great weight to the Bankruptcy Court's construction of an order with which it is familiar by virtue of its direct involvement in the proceedings. Thus, we conclude that the initial inquiry of whether Shenango's Reorganization Plan is ambiguous is subject to *de novo* review. If the Plan is ambiguous, we will defer to the Bankruptcy Court's interpretation unless it is unreasonable under the circumstances.

*Id*. at 346 (internal citations omitted) (emphasis added). Thus, the initial inquiry of whether the APA and Sale Order are ambiguous is subject to *de novo* review.

### III. PARTIES' CONTENTIONS

Spyglass argues that Mr. Weinstein is barred from arguing that his post-closing Participation Interests are Permitted Liens because he did not object to the Sale Order. (D.I. 7 at 27). Spyglass' primary argument on appeal, however, turns on § 2.4(b) of the APA, which

Spyglass contends excluded Mr. Weinstein from receiving his post-closing Participation Interest from the Film. (*See id*. at 17-24). That section provides, in relevant part:

> Section 2.4. Excluded Liabilities. ***Notwithstanding any provision in this Agreement or any other writing to the contrary*** . . . ***Buyer is assuming only the Assumed Liabilities*** and is not assuming any other Liability of any Seller Party of whatever nature, whether presently in existence or arising hereafter. ***All such other Liabilities shall be retained by and remain Liabilities of the Seller Parties*** (all such Liabilities not being assumed being herein referred to as the "Excluded Liabilities"), ***including***, without limitation:
>
> . . .
>
> (b) ***any amounts due to Affiliates of any Seller Party***, including any declared dividends or distributions.

(APA § 2.4(b) (emphasis added). There is no dispute that "Affiliates" includes Mr. Weinstein, and, according to Spyglass, the language used indicates the parties' clear intent that this provision should override all others. (D.I. 7 at 19-24; D.I. 12 at 5-8). Spyglass argues that the APA is unambiguous but the Bankruptcy Court's interpretation created ambiguity. (D.I. 12 at 11). If the Court finds the APA to be ambiguous, Spyglass urges the Court to review the extrinsic evidence propounded or remand the matter to the Bankruptcy Court for consideration thereof. (*Id*. at 28-30). Conversely, Mr. Weinstein argues that he could not have waived his interpretation of the APA, and that Spyglass' interpretation of the APA and Sale Order would violate principles of contract interpretation and make the APA internally inconsistent, illogical, and perhaps illegal. (*See* D.I. 11 at 10-19).

## IV.   ANALYSIS

The Bankruptcy Court correctly identified the applicable principles of contract interpretation. (Mem. Op. at 4). Where a written contract is clear and unambiguous, the Court need not look beyond its four corners. *See, e.g., Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759–60 (Del. 2018). In interpreting a written contract, the Court should endeavor to give effect to each

7

provision and to avoid concluding that the contract is internally inconsistent or contradictory. *See, e.g., Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."); *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) ("[A] court will not adopt [an] interpretation that leads to unreasonable results, but instead will adopt [a] construction that is reasonable and that harmonizes the affected contract provisions."). The Bankruptcy Court also cited the proposition that a court should not interpret a contract in such a way as to be contrary to law. (Mem. Op. at 9).

### A.  The APA Is Not Ambiguous

The Court agrees with the Bankruptcy Court and the parties that the APA is not ambiguous. (*See* D.I. 7 at 1, 3, 17; D.I. 11 at 12, 16; D.I. 12 at 8). Section 2.1 of the APA provides that Spyglass purchased the Debtors' assets free and clear of all liens except for "Permitted Liens." (APA § 2.1, AA586-587). Permitted Liens includes Participations. (APA Ex. A-10, AA646). Participations means with respect to any Covered Title (*Scream 4*) any contractually required payment to a third party involved in the production of the film (such as Mr. Weinstein as producer). (*Id.*). Schedule 3.10(a) specifically identifies Mr. Weinstein as being entitled to Participations in *Scream 4*. (AA1755). Section 2.3 of the APA provides that Lantern (Spyglass) assumed all liabilities arising from operation of the Purchased Assets (*Scream 4* is a Purchased Asset and Participations would only arise from exploitation of the film) (APA § 2.3, AA587). Section 2.4(j) of the APA provides that Participations that arose for any period prior to the Closing Date are an Excluded Asset. (APA § 2.4(j), AA587). There is no analog provision excluding Participations that arise after the Closing Date. Nor could there be based upon the above provisions. The Court agrees with the Bankruptcy Court that all the above provisions work together and support the conclusion that Spyglass

acquired the Film subject to Permitted Liens, and Mr. Weinstein is entitled to payment of his Participation Interest from Spyglass. (Mem. Op. at 10).

> B. **The Bankruptcy Court's Interpretation Is Reasonable and Harmonizes All Provisions of the APA**
>
> 1. **Specific Provisions of the APA Control More General Provisions**

Spyglass argues that § 2.4's prefatory language – "Notwithstanding any provision in this Agreement or any other writing to the contrary . . ." – expresses the parties' intent that this language would take precedence over any language elsewhere in the APA to the contrary. (*See* D.I. 7 at 20). According to Spyglass, although the Bankruptcy Court, "recognized that specific provisions of a contract control more general terms," the Bankruptcy Court "then proceeded to misapply the rule." (*Id*. at 23). Spyglass argues that "[t]he Bankruptcy Court did not reference the 'notwithstanding' preamble to the Excluded Liabilities section or explain how or why the Permitted Lien definition could be more specific in light of that preamble." (*Id*.).

To the contrary, the Memorandum Opinion includes a detailed analysis of the APA which supports the Bankruptcy Court's disagreement with Spyglass' contention that § 2.4(b) of the APA is the more specific provision. As the Bankruptcy Court explained, § 2.4(b) is "very broad." (Mem. Op. at 7). Indeed, as the Bankruptcy Court observed, that provision "states that any liability owed to any Affiliate of the Debtors was an Excluded Liability that Spyglass was not assuming." (*Id*. (quoting APA § 2.4(b)) (emphasis in original)). In contrast, the more specific provisions of the APA (and the Sale Order) were those expressly providing that Mr. Weinstein's Participation Interest was preserved. (Mem. Op. at 8).

The Court agrees. Section 2.1 of the APA and paragraph 12 of the Sale Order provide that all assets owned by the Debtors are sold free and clear of all interests except for a narrow category of interests – Permitted Liens. (Sale Order ¶ 12, AA376; APA § 2.1, AA586-587). Permitted

9

Liens are defined in the APA to include Participations, which are defined to include "contractually required amounts . . . payable to or on behalf of any third party involved in the development and/or production" of any Film sold to Spyglass. (APA Ex. A (Definitions), AA646). The schedule to section 3.10(a) of the APA specifically identifies Mr. Weinstein's Participation Interest in the Film as a Permitted Lien. (APA § 3.10(a), AA598-599; Schedule 3.10(a), AA1755). The Bankruptcy Court correctly concluded that the general provision that stated that Spyglass was not assuming any liabilities to Affiliates did not take precedence over the specific provisions of the APA (and the Sale Order) that sold the Film to Spyglass free and clear of all liens, claims, and interests, except Mr. Weinstein's Participation Interest in that Film.

Spyglass argues that Courts regularly interpret language similar to "Notwithstanding anything herein to the contrary" as controlling in the face of contrary provisions. (D.I. 7 at 20 n.20). "In other words, notwithstanding the fact that Permitted Liens is defined to include Participations elsewhere in the Asset Purchase Agreement, the Excluded Liabilities set forth in Section 2.4 control." (*Id*. at 20). Indeed such language is often deemed controlling. *See, e.g., Cisneros v. Alpine Ridge Grp*., 508 U.S. 10, 18 (1993) (in construing statutes, "[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."); *Cipla Ltd. v. Amgen Inc*., 386 F. Supp. 3d 386, 397 (D. Del.), *aff'd sub nom. Cipla Ltd. v. Amgen Inc*., 778 F. App'x 135 (3d Cir. 2019) (finding that the "clear and unambiguous meaning of this phrase is that regardless of whatever else one might find in any other provision or sentence of the [Agreement], the consequences of [this] sentence . . . must be enforced."). In this case, however, the "notwithstanding" clause at issue is a very broad provision, standing in contrast to specific provisions preserving Mr. Weinstein's Participation Interest, and adopting such an interpretation of the "notwithstanding" clause would lead to unreasonable results. *Axis Reinsurance Co.,*

993 A.2d at 1063. Such an interpretation would relieve Spyglass of the obligation to pay Mr. Weinstein for his Participation Interest in the Film, despite the fact that the APA and Sale Order specifically provided that the sale of the Film was ***subject to*** that Participation Interest. (*See* Sale Order ¶ 12, AA376; APA § 2.1, AA586-587; *id*. ¶ 3.10(a), AA598-599; *id*. Schedule 3.10(a), AA1755).

### 2. The Memorandum Opinion Harmonizes the Provisions of the APA

Although Spyglass acknowledges that a profit participant's ". . . payment is entirely contingent upon the success of the film and the revenue it generates," Spyglass asserts that it does not owe any post-closing Participation Interest payment to Mr. Weinstein under the APA. (D.I. 7 at 15-16). Spyglass does not argue that the Participation Interest disappeared. (*See id.* at 26 ("Importantly, Spyglass is not arguing that Robert Weinstein's Participation interest in *Scream 4* was eliminated by the Asset Purchase Agreement.")). Rather, Spyglass claims that the Liquidating Trust, which no longer owns the Film and is not entitled to any revenue from the Film, must make the calculations and pay Mr. Weinstein's Participation Interest based upon accountings that the Liquidating Trust has no way to access. The Liquidating Trust disagreed with Spyglass' contention. (*See* 8/5/21 Tr. at AA2082-2083; Mem. Op. at 6).

It makes little economic sense to construe the APA as allowing Spyglass to keep 100% of the future revenue of the Film, while requiring Liquidating Trust, which will receive no such revenue, to pay Mr. Weinstein 1.875% of a continuing amount of which the Liquidating Trust could not be aware. The Bankruptcy Court recognized that such a construction of the APA would be illogical and unreasonable, and thus adopted a construction that "harmonize[s] the affected provisions" of the APA. *Axis Reinsurance Co.*, 993 A.2d at 1063. Under the Bankruptcy Court's reasonable interpretation, if Spyglass chooses to exploit the Film and there is a revenue stream,

11

Spyglass will collect that money and will be able to calculate Mr. Weinstein's 1.875% Participation Interest and make any required payments to him.

The Bankruptcy Court noted that Spyglass' interpretation of § 2.4(b) of the APA would make that provision inconsistent with numerous other terms of the APA – particularly §§ 2.3, 2.4(j), and 3.10(a) – as well as inconsistent with the Sale Order. (*See* Mem. Op. at 10). Instead, the Bankruptcy Court adopted an internally consistent interpretation: that §§ 2.1, 2.3, 2.4(j), and 3.10(a) of the APA and paragraph 12 of the Sale Order were the more specific provisions dealing with what interests in the assets sold to Spyglass were preserved, and that § 2.4(b) was the more general provision, stating that Spyglass was not assuming liabilities to Affiliates of the Debtors.

Spyglass argues that the Bankruptcy Court's interpretation "renders certain other provisions of the APA meaningless." (D.I. 7 at 1-2, 16). According to Spyglass, the Bankruptcy Court's holding that a Participation Interest is a Permitted Lien that cannot be contractually excluded ignores the preamble to § 2.4, which carves out the Excluded Liabilities "[n]otwithstanding any provision in this Agreement or any other writing to the contrary." As noted above, this broad provision yields to the specific provision that Mr. Weinstein's Participation Interest is a Permitted Lien. The Bankruptcy Court's holding also renders § 2.4(j) meaningless, Spyglass argues, because it specifically excludes pre-Closing Participations: "If all Participations are Permitted Liens," "why would the parties to the Asset Purchase Agreement expressly designate pre-Closing Participations as Excluded Liabilities?" (D.I. 12 at 7). Contrary to Spyglass' argument, however, the Bankruptcy Court did ***not*** hold Participations are "liens" in the "traditional sense of the word," nor did the Bankruptcy Court hold that "all Participations are Permitted Liens." (*See* D.I. 7 at 24). The Bankruptcy Court merely enforced the terms of the parties' agreement in the APA: that Spyglass would purchase the Debtors' assets free and clear of all liens ***except for***

12

"Permitted Liens," a term contractually defined ***by the parties*** to include ***only*** post-closing Participation Rights (*id*. § 2.4(j)).

Finally, the Bankruptcy Court's interpretation avoids an illogical result. In the APA, the Debtors specifically acknowledged that they owned the Film free and clear except for Permitted Liens, which included Mr. Weinstein's Participation Interest. (Mem. Op. at 9; APA § 3.5, AA415-416; *id*. ¶ 3.10(a), AA418; *id*. AA1733-1734). The Sale Order also provides that it contained nothing that could "enhance" the Debtors' interest in any Purchased Asset. (Sale Order, ¶ LL, AA368). Under Spyglass' interpretation, the sale of the Film to Spyglass was subject to Mr. Weinstein's Participation interest, yet Spyglass was absolved of paying that interest. The Bankruptcy Court found nothing under § 363 of the Bankruptcy Code or the Sale Order to permit such a result. (8/5/2021 Tr. at 30:5-10, AA2047 ("Further, I don't think that the court would have the power, under Section 363, to sell the cover title free and clear of those participation rights. Even if the court did have the power to do that that was not presented to the court as the basis for excluding the liabilities owed to the affiliates.")). Because courts should not interpret a contract to be contrary to law, the Bankruptcy Court concluded that Spyglass' interpretation of § 2.4 was not reasonable. (*See* Mem. Op. at 9 (citing *Walsh v. Schlecht*, 429 U.S. 401, 408 (1977) ("Since a general rule of construction presumes the legality and enforceability of contracts, ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable." (citing 6A A. Corbin, Contracts §§ 1499, 1533 (1962))); *Doyle v. U.S. Sec'y of Labor*, 285 F.3d 243, 251 (3d Cir. 2002) (disfavoring a construction of an ambiguous release that would result in it being declared illegal in light of the "well-recognized principle of law requiring that ambiguous documents should not be deemed illegal where capable of constructions that will validate them"). The Bankruptcy Court instead construed the APA to harmonize its various provisions, such that

13

Mr. Weinstein's Participation Interest would be paid by the purchaser of the Film, without that purchaser receiving 1.875% more than the Debtors owned in the first place.

### C. Spyglass' Waiver Argument Is Unavailing

Spyglass argues that because Mr. Weinstein did not object to the Sale Order, he is now barred from arguing that his post-closing Participation Interests are Permitted Liens under the APA. It is unclear what facts Spyglass believes should have prompted such an objection when the APA clearly lists Mr. Weinstein's Participation Interest as a Permitted Lien. Mr. Weinstein's failure to object to a contrary interpretation provided no independent reason to deny the Motion to Enforce. Moreover, as Mr. Weinstein correctly points out, this argument was not raised below and cannot be raised for the first time on appeal. *Montrose Med. Grp*, 243 F.3d at 783.

### D. The Bankruptcy Court Did Not Err by Excluding Extrinsic Evidence

Spyglass argues that the Bankruptcy Court committed reversible error by denying the admission of the two declarations into evidence in support of Spyglass' alleged intent. The proper standard for review of an evidentiary ruling is abuse of discretion. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). "To show an abuse of discretion, appellants must show the district court's action was 'arbitrary, fanciful or clearly unreasonable.'" *Id*. (internal citations omitted). Spyglass argues that the declarations prove the intent of the parties in drafting the APA to expressly exclude any and all payments to Robert and Harvey Weinstein and to "completely sever" the business from its ties to those individuals. (*See* D.I. 7 at 29). Having agreed that the APA is unambiguous, any consideration by the Bankruptcy Court of the extrinsic evidence urged now by Spyglass would have been improper, and Spyglass fails to demonstrate any abuse of discretion. Spyglass further argues that this Court can review *de novo* the declarations as part of the record on appeal but cites no case law in support of this contention. (*Id*.). This request must be denied.

IV. **<u>CONCLUSION</u>**

For the reasons set forth herein, the Order is affirmed.  An appropriate order follows.